Watkins, Appellant, *v.* Sharon Aerie No. 327
Fraternal Order of Eagles.

Argued September 28, 1966.   Before BELL, C. J.,
MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and ROB-
ERTS, JJ.

*Michael Halliday,* for appellant.

*Albert E. Acker,* with him *Cusick, Madden, Joyce, Acker and McKay,* for appellee.

OPINION BY MR. CHIEF JUSTICE BELL, November 15, 1966:

Plaintiffs appeal from an Order of the lower Court, which (1) refused their motion to set aside a judgment of nonsuit entered for defendant and (2) dismissed their motion for a new trial.

Appellants brought an action of trespass to recover for injuries sustained by Bessie B. Watkins* on premises which were under defendant's control and for the consequential damages suffered by her husband, Harold R. Watkins.

On the evening of April 18, 1963, Mr. and Mrs. Watkins and a friend, Mrs. Bower, went to the Eagles Club on Main Street in Sharon, Pennsylvania, to play Bingo. They arrived at the Club about 7:30 P.M. and played Bingo until the conclusion of the games. At approximately 10:00 or 10:15 P.M. the plaintiffs and Mrs. Bower started to leave the Club. As Mrs. Watkins was leaving, she fell, sustaining severe injuries which resulted in this litigation. At the conclusion of appellants' evidence, the Court entered a nonsuit which was sustained by the Court en banc.

The law applicable to all the questions raised in this appeal is well settled, although its application to factual situations is at times difficult.

---

* Mrs. Watkins died on May 12, 1966 and her husband was substituted on the record as administrator of the Estate of Bessie B. Watkins.

(1) Defendant is not an insurer and the mere happening of an accident is not evidence or proof of negligence. *O'Neill v. Batchelor Bros., Inc. Funeral Homes*, 421 Pa. 413, 219 A. 2d 682; *Cuthbert v. Philadelphia*, 417 Pa. 610, 209 A. 2d 261; *Stenson v. Rechutti*, 416 Pa. 548, 207 A. 2d 760; *Markle v. Robert Hall Clothes*, 411 Pa. 282, 191 A. 2d 374; *Stimac v. Barkey*, 405 Pa. 253, 174 A. 2d 868.

(2) Defendant owes a duty to an invitee (a) to keep the premises in a reasonably safe condition and (b) to warn an invitee of latent defects or dangers which it knows exist or in the exercise of reasonable care should have known. *Polinelli v. Union Supply Co.*, 403 Pa. 547, 170 A. 2d 351; *Stimmel v. Kerr*, 394 Pa. 609, 148 A. 2d 232; *Stark v. Lehigh Foundries, Inc.*, 388 Pa. 1, 130 A. 2d 123.

(3) A plaintiff has the burden of proving by a fair preponderance of the evidence that the defendant was negligent and that its negligence was the proximate cause of plaintiff's injury. *Stenson v. Rechutti*, 416 Pa., supra; *Markle v. Robert Hall Clothes*, 411 Pa., supra; *Stimac v. Barkey*, 405 Pa., supra; *Loeb v. Allegheny County* 394 Pa. 433, 147 A. 2d 336; *Schofield v. King*, 388 Pa. 132, 130 A. 2d 93.

(4) A Court can grant a nonsuit only when plaintiff's evidence together with all reasonable inferences of fact arising therefrom viewed in the light most favorable to the plaintiff is insufficient to make out a prima facie case of negligence. *Stenson v. Rechutti*, 416 Pa., supra; *Markle v. Robert Hall Clothes*, 411 Pa., supra; *Flagiello v. Crilly*, 409 Pa. 389, 187 A. 2d 289.

Appellants' principal allegation of negligence is based (a) on the condition of the premises and (b) on the lighting of the doorway where Mrs. Watkins fell. This exit consisted of two doors which open out when a bar on the inside of the door is pressed. There is a sill which protrudes above the surface of the inside

floor and is 2½ to 3 inches above the pavement on the outside of the door. The mere existence of a walkway which is at a different level from the floor of the building, coupled with a raised door sill, is not negligence per se, nor, without more proof, a negligent construction. See *O'Neill v. Batchelor Bros., Inc. Funeral Homes*, 421 Pa., supra; *Haddon v. Snellenburg*, 293 Pa. 333, 143 Atl. 8. However, the difference in levels may become a negligent condition if it is inadequately lighted. *O'Neill v. Batchelor Bros., Inc. Funeral Homes*, 421 Pa., supra; *Loeb v. Allegheny Co.*, 394 Pa., supra; *Haddon v. Snellenburg*, 293 Pa., supra.

There was ample testimony by Mr. Watkins to support appellants' allegation of insufficient lighting, and if this was the cause of Mrs. Watkins' fall, a nonsuit could not be sustained.

Mrs. Watkins was familiar with this exit and had used it for a year and a half to two years during her weekly visits to the Club to play Bingo. For reasons hereinafter discussed we need not decide whether Mrs. Watkins' prior use of this exit is sufficient to convict her of contributory negligence or voluntary assumption of risk.

Although Mrs. Watkins was present in Court on the first day of the trial, she was not called to testify. Her doctor subsequently testified that, "I thought that possibly she wouldn't be physically able to appear here but . . . her recollection of the occurrence may be hazy, may be a little blurred." Both Mr. Watkins, who was waiting outside the Club near the exit, and Mrs. Bower, who was following Mrs. Watkins, saw her fall but could not establish the cause of her fall.

Watkins testified as follows: "A. Well, when my wife came out, she, first thing I seen was her coming away from the door staggering like you would if you stepped on a bad spot or in a hole, you have often staggered to catch your balance, if you ever did that, I

don't know. . . Well, she staggered on across to the wall and fell on her left side, and Mrs. Bowers and I picked her up and she did quite a bit of screaming and complaining and she was hurt pretty bad. Q. Did your wife say anything to you as to why she stumbled or fell? A. She claimed she had caught her feet in the door. . . . Q. And then where did she end up? A. She was off balance and she left the door, staggering as though you wouldn't catch your balance, often do, you've probably done it yourself, she was off balance and she went over and her hand struck this wall on this candy company and she fell back, she was on the edge of the, right on what I'd say was about the edge of the cement. Q. Now, at any time there did you see her feet or any of her feet in the vicinity of the sill and particularly where it touches the concrete slab on the outside? A. It was too dark in there to see people's feet, I would say, but I could tell when she started— . . . Q. All right, and when she first came out, was she erect at that time? A. She was erect, but staggering." Mrs. Bower testified as follows: "Q. O.K. Now, you tell us exactly what you observed as she opened the door and went outside. A. As she went out the door and I followed, the first thing or the only thing that I recall was of her putting her hand out, sort of groping to get ahold of something, and the next thing, she was in a sprawling position. Now, that's as near as I can tell you what happened; this thing happened so quickly that it's hard to just remember every little detail, because you're not expecting things like that."

The Greenville Hospital records disclose that Mrs. Watkins stated to the physician who attended her upon her arrival after the accident that "she slipped and fell." Mrs. Watkins was seventy-three years old and had suffered a stroke three years previously. She may have slipped or lost her balance through no fault of the defendant, or she may have tripped over her own foot,

or she may have become dizzy. In any event, plaintiffs failed to prove the proximate cause of her injury, i.e., she failed to prove that her fall and injury was due to some particular negligence of the defendant—what caused her to fall could only be a guess, and that is not sufficient to take a case to the jury. *Cuthbert v. Philadelphia*, 417 Pa., supra; *Puskarich v. Trustees of Zembo Temple*, 412 Pa. 313, 320-321, 194 A. 2d 208.

Appellants further contend that a new trial must be granted because the trial Court erred in failing to admit certain testimony.

Immediately after the accident one or two persons gathered around Mrs. Watkins, and one, whom Mr. Watkins was unable to identify by name, stated that Mrs. Watkins should be sent to the hospital and that Mrs. Watkins should not worry because they would take care of this matter. Mr. Watkins testified that he did not know the man's name but he "took it to be the Governor of the Lodge and the Secretary." Appellants could not and did not establish that it was the Governor or the Secretary or an officer of the defendant, or that he had authority to bind the defendant, or even that he had witnessed the accident. The lower Court correctly excluded this evidence.

Order affirmed.

Mr. Justice MUSMANNO dissents.